UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
UFCW LOCAL 50 PENSION FUND and ITS
TRUSTEE,

        Plaintiffs,

              **REPORT AND RECOMMENDATION**
              **20 CV 4751 (AMD)(LB)**

 - against -

G & W FOOD PRODUCTS, INC. a/k/a
G. & W. FOOD PRODUCTS, INC. and
JOE DOE COMPANIES 1–99,

        Defendants.
----------------------------------------------------------X

**BLOOM, United States Magistrate Judge:**

  Plaintiffs, UFCW Local 50 Pension Fund (the "Plan") and its Trustee (collectively, "plaintiffs"), bring this action against defendants G & W Food Products, Inc., also known as G. & W. Food Products, Inc., ("G&W") and Joe Doe Companies 1–99 pursuant to the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq*. ("ERISA"). Despite proper service of the summons and complaint, defendant G&W has failed to plead or otherwise defend this action. See Entry of Default, ECF No. 7. Pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, plaintiffs now move for a default judgment solely against defendant G&W.[1] ECF No. 8. The Honorable Ann M. Donnelly referred plaintiffs' motion for a

---

[1] Under ERISA, regulations issued under the Internal Revenue Code define a controlled group as "two or more corporations connected through stock ownership." 26 C.F.R. § 1.414(b)-1. Plaintiffs' Complaint includes a cause of action against defendants Joe Doe Companies 1–99, "fictitious defendants representing any other trade or business under common control with G&W." Complaint ("Compl."), ECF No. 1 at ¶ 22. As the default judgment sought is only against G&W, plaintiffs seek dismissal of the Complaint against defendant Joe Doe companies 1–99 without prejudice and with leave to either reopen the case or bring a new action against the controlled group. Plaintiffs' Memorandum of Law in Support of the Motion for Default Judgment ("Mem."), ECF No. 8-6 at 6. I respectfully recommend that the Complaint against Defendant Joe Doe Companies 1–99 should be dismissed without prejudice. C.f., Trustees of Leather Goods, Handbags, & Novelty Workers' Union Local 1 Joint Ret. Fund v. Cent. Fur Storage Co., No. 18-CV-7224, 2019 WL 3937132, at *8 (E.D.N.Y. Aug. 2, 2019), Report and

default judgment to Magistrate Judge Steven Gold for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). See Dec. 17, 2020 Order. On January 12, 2021, this case was reassigned to me. For the reasons set forth below, it is respectfully recommended that plaintiffs' motion for a default judgment should be granted.

## BACKGROUND[2]

ERISA is a comprehensive statutory regime that regulates employee retirement plans, Trs. of Local 138 Pension Tr. Fund v. F.W. Honerkamp Co. Inc., 692 F.3d 127, 128–29 (2d Cir. 2012) (citing ERISA § 2 *et seq.*, 29 U.S.C. § 1001 *et seq.*). ERISA was designed to "ensure that employees and their beneficiaries would not be deprived of anticipated retirement benefits by the termination of pension plans before sufficient funds have been accumulated in the plans." Id. at 129. One type of plan governed by ERISA is the multiemployer pension plan which allows multiple employers to "pool contributions into a single fund that pays benefits to covered retirees... for one or more contributing employers." Id. To address the risk of widespread employer withdrawals from these multiemployer plans resulting in collapse, Congress passed the Multiemployer Pension Plan Amendments Act of 1980 (the "MPPAA"), which amended ERISA to "force withdrawing employers to internalize the costs associated with their withdrawal" and to

---

Recommendation adopted, 2019 WL 3936676 (E.D.N.Y. Aug. 20, 2019) (recommending dismissal of unidentified fictitious entity defendants without prejudice on a motion for default judgment). The Court should not grant leave to reopen, but plaintiffs may commence a new action against any entity that falls within G&W's controlled group, once identified.

[2] The facts are drawn from the uncontested allegations in plaintiffs' complaint, as well as documents incorporated by reference, and are taken as true for the purposes of deciding this motion. See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 108 (2d Cir. 1997) (deeming all well-pleaded allegations in a complaint admitted on a motion for a default judgment); Gesualdi v. Interstate Masonry Corp., No. 12-CV-0383, 2014 WL 1311709, at *3 n.1 (E.D.N.Y. Mar. 28, 2014) (relevant CBAs were deemed incorporated by reference into the complaint).

require an employer that withdraws from a multiemployer plan to pay its "proportionate share of the pension plan's unfunded vested benefits," otherwise known as "withdrawal liability." UFCW Local 174 Pension Fund v. 5600 Mkt. Corp., No. 17-CV-5789, 2018 WL 4403394, at *5 (E.D.N.Y. Aug. 16, 2018), Report and Recommendation adopted as modified, 2018 WL 4388452 (E.D.N.Y. Sept. 14, 2018) (citations omitted); see also Trs. of Local 138 Pension Tr. Fund, 692 F.3d at 129–30.

Here, the Plan[3] is a multiemployer pension benefit plan within the meaning of Section 3(37) of ERISA, 29 U.S.C. § 1002(37) and an "employee pension benefit plan" within the meaning of Section 3(2)(A) of ERISA, 29 U.S.C. § 1002(2)(A). Compl. ¶ 5. The Trustee is a "fiduciary" of the Plan, as defined in Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A). Id. at ¶ 4. Defendant G&W, a New York Corporation, was a party to a collective bargaining agreement ("CBA") which required contributions to the Plan. Id. at ¶¶ 9–10. G&W was thus subject to the Agreement and Declaration of Trust of United Food and Commercial Workers Local 50 Pension and Welfare Trust Funds, effective August 1, 2003. Declaration of Scott Shaffer ("Shaffer Decl.") Exhibit A ("Ex. A"), ECF No. 8-4 at 9 (Article II).

Plaintiffs allege that on November 15, 2008, the Plan "incurred a mass withdrawal[4] of all its contributing employers." Compl. ¶ 6. Specifically, plaintiffs allege that G&W effected a complete withdrawal from the Plan within the meaning of Section 4203(a) of ERISA, 29 U.S.C. § 1383(a), and is thus subject to withdrawal liability under ERISA § 4219(c)(1)(d). Id. at ¶¶ 11, 14.

---

[3] The Plan is administered by I E Shaffer & Co., a third-party plan administrator. Compl. ¶ 7.

[4] A mass withdrawal means: "'(1) [t]he withdrawal of every employer from the plan, (2) [t]he cessation of the obligation of all employers to contribute under the plan, or (3) [t]he withdrawal of substantially all employers pursuant to an agreement or arrangement to withdraw.'" UFCW Local 174 Pension Fund, 2018 WL 4403394, at n.5 (quoting 29 C.F.R. § 4001.2).

Plaintiffs allege defendant is in default of its withdrawal liability pursuant to ERISA § 4219(c)(5), 29 U.S.C. § 1399 (c)(5). Id. at. ¶ 15.

On January 23, 2009, the Plan sent G&W a notice and demand for reallocation liability for the payment of $215,093.00 to be made in quarterly installments of $1,378.02. Id. at ¶ 13; Shaffer Decl. ¶ 13; Shaffer Decl. Ex. C. On March 7, 2011, the Plan sent a corrected notice and demand for G&W's reallocation liability payment of $438,561.00, payable in quarterly installments of $1,512.00 for an infinite amount of time. Shaffer Decl. ¶ 14; Shaffer Decl. Ex. D.

On March 27, 2020, plaintiffs notified G&W that the Plan had not received a payment as required by its payment schedule. Compl. ¶ 15; Shaffer Decl. ¶ 15; Shaffer Decl. Ex. E. On June 15, 2020, the Plan notified G&W that, due to representations made by GW with regard to financial hardship, there was a substantial likelihood that G&W would be unable to remit each of its withdrawal liability installment payments; thus, "the Plan accelerated G&W's withdrawal liability, resulting in the full balance of withdrawal liability principal, listed as $207,648.00, plus damages, due." Mem. at 3; see Shaffer Decl. Ex. F. G&W has failed to remit payment in response to the June 15, 2020 letter. Compl. ¶ 15; Shaffer Decl. at ¶ 17.

Plaintiffs seek immediate payment of the total amount of the unpaid contributions plus accrued interest, liquidated damages, and reasonable attorney's fees and costs pursuant to ERISA Sections 502(g)(2)(A), 502(g)(2)(B), 502(g)(2)(C), 502(g)(2)(D), and 4301(b), 29 U.S.C. §§ 1132(g)(2)(A), 1132(g)(2)(B), 1132(g)(2)(C), 1132(g)(2)(D), and 1451(b). Compl. ¶ 24. Specifically, plaintiffs claim the Plan is "entitled to a default judgment pursuant to Fed. R. Civ. P. 55(b)(2) against G&W in the amount of $256,650.24, consisting of: (i) $207,648.00 in withdrawal liability principal; (ii) $3,517.04 in interest through December 15, 2020, plus $18.75 in additional

4

daily interest commencing on December 16, 2020; (iii) $41,529.60 in liquidated damages; and (iv) $3,955.60 in attorney's fees and costs." Mem. at 1.

## PROCEDURAL HISTORY

Plaintiffs filed this action on October 5, 2020. ECF No. 1. Plaintiffs properly served the summons and complaint on defendant by personally serving defendant's designated authorized agent in the Office of the Secretary of State of New York and filed proof of service. ECF No. 5. When defendant failed to respond to the complaint, plaintiffs requested, and the Clerk of Court noted an entry of default against defendant. ECF Nos. 6–7. Plaintiffs now move for a default judgment. ECF No. 8.

## DISCUSSION

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process for a plaintiff to obtain a default judgment. First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). A plaintiff may then move for a default judgment against a defendant. Fed. R. Civ. P. 55(b)(2). If a defendant fails to appear or fails to move to set aside the default under Rule 55(c), the Court may enter a default judgment on plaintiff's motion.

In light of the Second Circuit's "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95–96 (2d Cir. 1993). "Accordingly, plaintiff is not entitled to a default judgment as a matter of right simply because a party is in default." Finkel v. Universal Elec. Corp., 970 F. Supp. 2d 108, 118

5

(E.D.N.Y. 2013) (citing Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (courts must "supervise default judgments with extreme care to avoid miscarriages of justice")).

On a motion for a default judgment, the Court "deems all the well-pleaded allegations in the pleadings to be admitted." Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 108 (2d Cir. 1997); see also Universal Elec. Corp., 970 F. Supp. 2d at 119. Even though the pleadings are deemed admitted, the Court still has a "responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief." Rolls-Royce plc v. Rolls-Royce USA, Inc., 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)). In other words, "[a]fter default . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." Id. (citation omitted). If the unchallenged facts establish defendant's liability, the Court then determines the amount of damages due. Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999) (citing Transatlantic Marine Claims Agency, Inc., 109 F.3d at 111).

In evaluating defendant's liability, the Court is limited to the four corners of the complaint. Rolls-Royce plc, 688 F. Supp. 2d at 153. The Court is not so restricted in determining damages, which may be calculated based on documentary evidence, affidavits, or evidence presented at a hearing on damages. See Transatlantic Marine Claims Agency, Inc., 109 F.3d at 111.

### I. Defendant's Liability

ERISA Section 4201, 29 U.S.C. § 1381(a), provides that "[i]f an employer withdraws from a multiemployer plan in a complete withdrawal or a partial withdrawal, then the employer is liable

to the plan in the amount determined under this part to be the withdrawal liability." "[T]he primary goal of the [Act] is to ensure that withdrawing employers are responsible for their fair share of inherited liabilities by mandating that 'an employer [that] withdraws from a multiemployer plan . . . is liable to the plan in the amount determined . . . to be the withdrawal liability.'" Div. 1181 Amalgamated Transit Union—N.Y. Emples. Pension Fund v. D & A Bus Co., 270 F. Supp. 3d 593, 602 (E.D.N.Y. 2017) (citing ERISA § 4201(a)). Pursuant to ERISA Section 4203, 29 U.S.C. § 1383(a), "a complete withdrawal from a multiemployer plan occurs when an employer (1) permanently ceases to have an obligation to contribute under the plan, or (2) permanently ceases all covered operations under the plan."

When a plan determines that an employer has completely withdrawn from a fund, ERISA requires the plan to give the withdrawing employer notice stating the amount of withdrawal liability and the schedule for liability payments. ERISA § 4219, 29 U.S.C. § 1399(b). The statute requires this initial notification of withdrawal to be "as soon as practicable." 29 U.S.C. § 1399(b)(1). The withdrawn employer may seek review, identify any inaccuracy in the calculation of liability, or appeal the determination within 90 days of receiving notice. 29 U.S.C. § 1399(b)(2)(A). The plan must review the determination and issue a decision to the employer. 29 U.S.C. § 1399(b)(2)(B). ERISA requires the withdrawn employer to begin paying according to the schedule the plan provides within 60 days after the demand is sent, irrespective of whether the employer seeks review or an appeal of the plan's determination. 29 U.S.C. § 1399(c)(2). Should the withdrawn employer default, the plan may seek immediate payment of the outstanding withdrawal liability and "accrued interest on the total outstanding liability from the due date of the first payment which was not timely made." 29 U.S.C. § 1399(c)(5). Default occurs when a

7

withdrawn employer fails to make a payment and fails to cure that deficiency within 60 days. 29 U.S.C. § 1399(c)(5)(A).

"Generally, where a plan sponsor seeks withdrawal liability payments, it must 'show only that it complied with statutory procedural requirements.'" Div. 1181 Amalgamated Transit Union—N.Y. Emples. Pension Fund, 270 F. Supp. 3d at 608 (quoting Trs. of the Amalgamated Ins. Fund v. Steve Petix Clothier Inc., No. 03 Civ. 4530, 2004 WL 67480, at *2 (S.D.N.Y. Jan. 15, 2004)). Thus, "the plan sponsor must (1) determine that an employer has partially or completely withdrawn from a multiemployer plan; (2) determine the amount of the employer's withdrawal liability; (3) notify the employer of the amount of liability and the payment schedule; and (4) demand payment according to the schedule." Nat'l Ret. Fund v. Caesars Entm't Corp., 15 Civ. 2048, 2016 WL 2621068, at *4 (S.D.N.Y. May 5, 2016) (citations omitted), Report and Recommendation adopted, 2016 WL 6601561 (S.D.N.Y. Nov. 7, 2016).

Here, plaintiffs' complaint alleges that defendant permanently ceased to be obligated to contribute to the Plan, which constitutes a "complete withdrawal" from the Plan under ERISA Section 4203(a), 29 U.S.C. § 1383(a). Compl. ¶ 11. The Plan determined the amount of defendant's withdrawal liability, notified defendant of the amount of liability and the payment schedule, and demanded payment. Id. at ¶ 12–16. Defendant has failed to make a payment, thereby defaulting on its withdrawal liability obligations to the fund. Id. at ¶ 17. These factual allegations are sufficient to establish defendant's liability under ERISA for withdrawal liability.

## II. ERISA Damages

A defendant's default amounts to admission of liability for all well pleaded factual allegations in the complaint, *except* those relating to damages. Credit Lyonnais Sec. (USA), Inc.,

183 F.3d at 155 ("Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true."); Greyhound Exhibitgroup, Inc. v. E.L.U.L Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992) ("While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages."). On a motion for a default judgment, a plaintiff has the burden to prove damages to the Court with a "reasonable certainty." Credit Lyonnais Secs. (USA), Inc., 183 F.3d at 155 (citing Transatlantic Marine Claims Agency, Inc., 109 F.3d at 111). To determine the amount of damages, the district court "may conduct hearings or make referrals," Fed. R. Civ. P. 55(b)(2), but "[d]etailed affidavits and other documentary evidence can suffice in lieu of an evidentiary hearing." Chanel, Inc. v. Louis, No. 06-CV-5924 (ARR)(JO), 2009 WL 4639674, at *4 (E.D.N.Y. Dec. 7, 2009) (citing Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508 (2d Cir. 1991); see Bricklayers Ins. & Welfare Fund v. Primo Brick, Inc., No. 11-CV-5742(FB)(LB), 2013 WL 2120338, at *4 (finding a hearing on damages unnecessary when plaintiffs provided multiple affirmations and additional documentary evidence).

Plaintiffs request $256,650.24 in damages consisting of (1) $207,648.00 in withdrawal liability principal; (2) $3,517.04 in interest through December 15, 2020, plus $18.75 in additional daily interest commencing on December 16, 2020; (3) $41,529.60 in liquidated damages; (4) $3,955.60 in attorney's fees and costs. Mem. at 1. In support of their application for damages, plaintiffs submit the following: Declaration of Scott Shaffer, the Secretary/Treasurer of the Third-Party Administrator of the Plan, ECF No. 8-4 ("Shaffer Decl.")[5] and Declaration of Michael S.

---

[5] The Shaffer Decl. attaches The Plan's Amended Agreement and Restatement of Trust, effective August 1, 2003 (Shaffer Decl. Ex. A); The Plan's 2015 Restatement (Shaffer Decl. Ex. B); the Notice and Demand for Payment of Withdrawal Liability to G&W (Shaffer Decl. Ex. C); the Corrected Notice and Demand for Payment of Reallocation Liability (Shaffer Decl. Ex. D); the Installment Plan and Warning of Default to G&W (Shaffer Decl. Ex. E); the Notice of Accelerated Withdrawal Liability to G&W (Shaffer

9

Adler, a partner with the law firm of Cohen, Weiss and Simon LLP and counsel to plaintiffs, ECF No. 8-5 ("Adler Decl.").[6] Reviewed together, plaintiffs' submissions are sufficient for the Court to calculate damages for the period in question with reasonable certainty. An evidentiary hearing is not necessary.

### A. Amount of Withdrawal Liability

"[O]nce a defendant is found to have violated ERISA, the plaintiff is entitled to recover any unpaid withdrawal liability and 'such award is a mandatory remedy.'" United Food & Commer. Workers Local 348 Pension Fund v. Franklin Poly Corp., No. 12-CV-5837, 2013 WL 4525658, at *7 (E.D.N.Y. Aug. 27, 2013) (citations omitted). Furthermore, "[a]ny dispute concerning the plan's assessment of liability had to be settled through arbitration, and an employer's failure to arbitrate or dispute the plan sponsor's calculation in the face of proper notification will result in the court's adoption of the sum proffered by the plan, even in the absence of documentation as to how the figure was calculated." Labarbera v. United Crane & Rigging Servs., Nos. 08-CV-3274, 08-CV-3983, 2011 WL 1303146, at *5 (E.D.N.Y. Mar. 2, 2011) (adopting plaintiff's calculation of withdrawal liability "despite the lack of evidence regarding its calculation"); see also Captre Elec. Supply Co., No. 14–CV–3584, 2015 WL 5316257, at *5 (E.D.N.Y. Jul. 31, 2015) ("The record does not need to include evidence supporting [plaintiff's] calculation of withdrawal liability because [defendant's] liability arises from its failure to respond to earlier demands and as a result, the amount of withdrawal liability demanded became due and owing."), Report and Recommendation adopted, 2015 WL 5330388 (E.D.N.Y. Sept. 11, 2015).

---

Decl. Ex. F); and a Summary of G&W's Withdrawal Liability (Shaffer Decl. Ex. G).

[6] The Adler Decl. attaches a copy of the Complaint (Adler Decl. Ex. A); a copy of the Affidavit of Service (Adler Decl. Ex. B); Interest Calculations (Adler Decl. Ex. C); Plaintiff Attorney's Invoice (Adler Decl. Ex. D); Confirmation of Filing Payment to the New York Eastern District Court and Service Fees (Adler Decl. Ex. E); and Cases (Adler Decl. Ex. F).

As of September 1, 2010, the Plan assessed G&W's reallocation liability to be $438,561.00 due in quarterly payments. See Shaffer Decl. Exs. D, G. On June 15, 2020, plaintiffs notified defendant that the Plan accelerated G&W's withdrawal liability, resulting in the full balance of withdrawal liability principle in present value, $207,648.00, becoming due. See Shaffer Decl. Ex. F; Adler Decl. ¶¶ 14–15. This is sufficient for the Court to determine the amount of withdrawal liability. Accordingly, I respectfully recommended that the Court should award plaintiffs **$207,648.00** in withdrawal liability.

### B. Interest

Plaintiffs are entitled to interest on defendant's unpaid withdrawal liability. ERISA § 502, 29 U.S.C. § 1132(g)(2)(B). ERISA provides that "interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of title 26." 29 U.S.C. § 1132(g)(2)(E). According to the Plan, interest rates shall be calculated according to the method set forth by the Pension Guaranty Benefit Corporation. Shaffer Decl. Ex. B at 91.[7]

Pursuant to 29 C.F.R. § 4219.32(d), "the due date from which interests accrues shall be, for an overdue withdrawal liability payment and for an amount of withdrawal liability in default, the date of the missed payment that gave rise to the delinquency or the default." Interest is thus calculated on the $207,648.00 withdrawal liability beginning on June 15, 2020, the date of plaintiffs' correspondence with defendant. The amount of interest due is calculated as follows:

> The amount of interest due the plan for overdue or defaulted withdrawal liability, or due the employer for overpayment, is equal to the overdue, defaulted, or overpaid amount multiplied by:

---

[7] The interest rates, which are set forth at https://www.pbgc.gov/prac/itnerest/oodwl, are 4.25% for the period between June 15, 2020 and June 30, 2020, and 3.25% from July 1, 2020 until December 15, 2020.

(1) For each full calendar quarter in the period from the due date (or date of overpayment) to the date paid (or date of refund), one-fourth of the annual rate in effect for that quarter;

(2) For each full calendar month in a partial quarter in that period, one-twelfth of the annual rate in effect for that quarter; and

(3) For each day in a partial month in that period, one-three-hundred-sixtieth of the annual rate in effect for that month

29 CFR § 4219.32(c). Table I below sets forth the interest calculations:[8]

| Principal Amount | Start Date | End Date | Interest Rate | Calculation | Interest Due |
|---|---|---|---|---|---|
| $207,648.00 | 6/15/2020 | 6/30/2020 | 4.25% | [($207,648.00 x .0425)/360 days] x 15 days | $367.71 |
| $207,648.00 | 7/1/2020 | 9/30/2020 | 3.25% | ($207,648.00 x .0325)/4 | $1,687.14 |
| $207,648.00 | 10/1/2020 | 10/31/2020 | 3.25% | ($207,648.00 x .0325)/12 | $562.38 |
| $207,648.00 | 11/1/2020 | 11/30/2020 | 3.25% | ($207,648.00 x .0325)/12 | $562.38 |
| $207,648.00 | 12/1/2020 | 12/15/2020 | 3.25% | [($207,648.00 x .0325)/360 days] x 15 days | $281.19 |
| **TOTAL DUE** | | | | | **$3,460.80** |

Accordingly, I respectfully recommend that the Court should award plaintiffs **$3,460.80** in prejudgment interest on the unpaid contributions through December 15, 2020. Furthermore, I recommend that the Court should award plaintiffs an additional sum of interest on the unpaid

---

[8] In support of plaintiffs' request for $3,517.04 in interest, plaintiffs submit their calculations. See Adler Decl. Ex. C. The Court finds that the calculations for the dates 6/15/2020 through 6/30/2020 are correct. For 7/1/2020 through 12/15/2020 plaintiffs request $3,149.33. Plaintiffs did not include the formula they used to reach this figure. The Court finds that the accurate subtotal for those dates is $3,093.09, as is demonstrated above in Table I.

contributions to be calculated at **$18.75 per day**[9] from December 16, 2020 through the date judgment is entered by the Court.

### C. Liquidated Damages

Plaintiffs are entitled to liquidated damages on the unpaid contributions. 29 U.S.C. § 1132(g)(2)(C). ERISA permits the Court to award liquidated damages equal to the greater of either: (1) the interest on the unpaid contributions; or (2) the amount designated by the CBA (up to 20 percent of the delinquent contributions). 29 U.S.C. § 1132(g)(2)(C)(i)–(ii). The Agreement and Declaration of Trust reflects that any action for delinquent contributions shall also involve an award of liquidated damages equal to the greater of (A) the amount of interest charged on the unpaid contributions, or (B) 20 percent of the unpaid contributions. Shaffer Decl. Ex. A at 28 (Article VI, Section 3(c)(iii)(B)). Plaintiffs request $41,529.60 in liquidated damages, as this amount is 20 percent of the $207,648.00 in unpaid contributions and greater than the interest charged. Mem. at 12; Adler Decl. ¶ 27. Accordingly, it is respectfully recommended that the Court should award plaintiffs **$41,529.60** in liquidated damages.

### D. Attorney's Fees

Section 502 of ERISA provides that a plaintiff may recover attorney's fees in any action to enforce a judgment to recover delinquent contributions. 29 U.S.C. § 1132(g)(2)(D). Courts in this Circuit award attorney's fees to a prevailing party by calculating the "presumptively reasonable fee." Simmons v. N.Y.C. Transit Auth., 575 F.3d 170, 172 (2d Cir. 2009). The Court determines the presumptively reasonable fee by multiplying the number of hours the attorney spent on the litigation by "a reasonable hourly rate." Gesualdi v. Interstate Payroll Co., Inc., 2:14-CV-06780, 2019 WL 109379, at *7 (E.D.N.Y. Jan. 4, 2019) (citing Hensley v. Eckerhart,

---

[9] Daily rate interest is calculated based on $207,648.00 (principal amount due) x 3.25% (.0325) = $6,748.56 / 360 = $18.75 per day.

461 U.S. 424, 433 (1983)). A reasonable rate is "the rate a paying client would be willing to pay," based on the "prevailing [hourly rate] in the community . . . where the district court sits." Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany and Albany Cty. Bd. of Elections, 522 F.3d 182, 190 (2d Cir. 2008); see also Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984) ("[T]he requested rates [must be] in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.").

### 1. Rates

Hourly rates in the Eastern District of New York generally range "from $300–$450 per hour for partners, $200–$300 per hour for senior associates, and $100–$200 per hour for junior associates." Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. D&A Bus Co., Inc., 270 F. Supp. 3d 593, 618 (E.D.N.Y. 2017) (collecting cases); see also Trs. of Metal Polishers Local 8A-28A Funds v. Nu Look Inc., No. 18-CV-3816, 2019 WL 3500908, at *5 (E.D.N.Y. July 31, 2019) (citations omitted); Trs. of Empire State Carpenters Annuity v. C.R. Edwards Constr. Co., Inc., No. 15-CV-5232, 2016 WL 6875969, at *5 (E.D.N.Y. Nov. 22, 2016). "Awards for paralegal fees in this district typically range from $70 to $90 per hour in ERISA default actions." Trs. of the Plumbers Local Union No. 1 Welfare Fund, Additional Security Benefit Fund, Vacation & Holiday Fund, Trade Education Fund v. Temperini Mech. Inc., No. 18 CV 2596, 2020 WL 571680, *4 (E.D.N.Y. Jan. 13, 2020), Report and Recommendation adopted, 2020 WL 565410 (E.D.N.Y. Feb. 5, 2020).

Plaintiffs are represented by Cohen, Weiss and Simon LLP ("Cohen Weiss"). Adler Decl. ¶ 1. Plaintiffs request an hourly rate of $416.00 for attorney Michael Adler. Mem. at 15. Michael Adler is a partner at his firm and a 2002 graduate of The George Washington University School of Law. Adler Decl. ¶ 32. His work focuses on employee benefits practice, including experience

14

litigating cases to collect delinquent contributions; he has been counsel of record in over 200 ERISA cases. Id. I find the requested hourly rate of $416.00 to be reasonable for Mr. Adler. See, e.g., Gesualdi, et al. v. Rockwala Inc., No. 18-Civ.-5470 (JBW)(SJB), Dkt. No. 15 (E.D.N.Y. Feb. 21, 2019) (awarding Mr. Adler $425 per hour in 2016 to 2017 and $450 per hour for 2018 for his work on an ERISA default). Plaintiffs request an hourly rate of $83.00 for paralegal George Kramer. Mr. Kramer has been employed by Cohen Weiss as a paralegal since 2002. Adler Decl. ¶ 32. This hourly rate is also reasonable and in line with his previous awards in this District. See e.g., Ferrara v. Happy Time Trucking Llc, No. 17-CV-7450, 2020 U.S. Dist. LEXIS 202457, *29 (E.D.N.Y. Oct. 28, 2020) (awarding Mr. Kramer $95 per hour for his work in an ERISA action), Report and Recommendation adopted, 2020 U.S. Dist. LEXIS 219736 (E.D.N.Y. Nov. 19, 2020).

### 2. Hours

After the reasonable hourly rate is determined, the Court multiplies that rate by the reasonable number of hours the attorney expended to determine a presumptively reasonable fee. The party seeking fees bears the burden of establishing that the number of hours for which it seeks compensation is reasonable. Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1160 (2d Cir. 1994) (citing Hensley, 461 U.S. at 437).

A request for attorney's fees must be "supported by contemporaneous time records that show, 'for each attorney, the date, the hours expended, and the nature of the work done.'" Bd. of Trs. of Pointers, Cleaners & Caulkers Welfare Fund, Pension Fund and Annuity Fund v. Super Eagle Contracting Inc., No. 12-CV-0399, 2013 WL 802034, at *4 (E.D.N.Y. Jan. 16, 2013), Report and Recommendation adopted, 2013 WL 802847 (E.D.N.Y. Mar. 5, 2013) (quoting New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1154 (2d Cir. 1983)).

Here, plaintiff requests 10.3 hours of attorney time and 2.4 hours or paralegal time. Mem. at 15; Adler Decl. ¶ 30. This is reasonable. Moreover, plaintiffs have submitted contemporaneous billing records setting forth the amount of time spent rendering services, the dates services were rendered, the hourly rate charged for the services, the name of the attorney or paralegal who rendered services, and a description of the services performed. See Adler Decl., Ex. D. Accordingly, I respectfully recommend that the Court should award plaintiffs **$3,485.60** in attorney's fees.

### E. Costs

"In a successful action under ERISA to recover delinquent contributions, courts award '[r]easonable and identifiable out-of-pocket disbursements ordinarily charged to clients.'" Trs. of Plumbers Local Union No. 1 v. Temperini Mech., Inc., No. 12 Civ. 05646, 2014 WL 4678025, at *4 (E.D.N.Y. Sept. 19, 2014) (quoting Trs. of the Rd. Carriers Local 707 Welfare Fund v. Goldberg, No. 08-CV-0884, 2009 WL 3497493, at *10 (E.D.N.Y. Oct. 28, 2009)). The party requesting reimbursement of its costs must provide the court with adequate documentation "not only showing costs were incurred, but that they were paid." Markey v. Lapolla Indus., Inc., No. 12 CV 4622, 2017 WL 9512407, at *8 (E.D.N.Y. Aug. 24, 2017), Report and Recommendation adopted, 2017 WL 4271560 (E.D.N.Y. Sept. 26, 2017).

Plaintiffs request a total of $470.00 in costs, including the $400.00 court filing fee and a $70.00 service of process fee. Adler Decl. ¶ 33. Plaintiffs provide documents showing payment of the court filing fee and service of process fee. Adler Decl. Ex. E. Accordingly, I respectfully recommend that the Court should award plaintiffs **$470.00** in costs.

## CONCLUSION

Accordingly, it is respectfully recommended that plaintiffs' motion for a default judgment against G&W should be granted. The complaint against Joe Doe Companies 1–99 should be dismissed without prejudice. A default judgment should be entered against G&W in the amount of **$256,594.00** reflecting the following awards to plaintiffs: $207,648.00 in ERISA withdrawal liability, $3,460.80 in interest (through December 15, 2020), $41,529.60 in liquidated damages, $3,485.60 in attorney's fees, $470.00 in costs. In addition, plaintiffs should be awarded $18.75 per day in interest from December 16, 2020 through entry of judgment herein. Plaintiffs are hereby ordered to serve a copy of this Report upon defendant G&W at its last known address and to file proof of service with the Court forthwith.

## FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this Report to file written objections. See Fed. R. Civ. P. 6. Such objections shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989).

SO ORDERED.

                                                              /S/
                                          LOIS BLOOM
                                          United States Magistrate Judge

Dated: August 17, 2021
Brooklyn, New York